UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WILLIAM BUNTIN,

      Plaintiff,

v.                                                                    Case No:  6:14-cv-1394-Orl-37GJK

SQUARE FOOT MANAGEMENT COMPANY, LLC,

      Defendant.

REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** **JOINT MOTION FOR APPROVAL OF SETTLEMENT AND STIPULATION OF DISMISSAL (Doc. No. 26)**
>
> **FILED:** January 5, 2015
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part**.

**I.     BACKGROUND.**

On August 27, 2014, William Buntin (the "Plaintiff") filed a complaint (the "Complaint") against Square Foot Management Company, LLC (the "Defendant") alleging violations of the overtime provisions of the Fair Labor Standards Act (the "FLSA") and a state law breach of contract claim.  Doc. No. 1.  Plaintiff is a former employee of Defendant, whose prior duties included working at Defendant's self-storage facility.  Doc. No. 21 at 1.  On January 5, 2015, the parties filed a Joint Motion for Approval of Settlement and Stipulation of Dismissal (the

"Motion"), requesting the Court approve their Confidential Settlement Agreement and General Release (the "Agreement") (Doc. No. 26-1), enter a stipulated final judgment, and dismiss the case with prejudice.  Doc. No. 26.

## II.     LAW.

In *Lynn's Food Stores, Inc. v. United States Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982), the Eleventh Circuit addressed the only means by which an FLSA settlement may become final and enforceable:

> [t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them.... The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

*Id*. at 1352-53.  Thus, unless the parties have the Secretary of Labor supervise the payment of unpaid wages owed or obtain the Court's approval of the settlement agreement, the parties' agreement is unenforceable.  *Id*.; *see also Sammons v. Sonic-North Cadillac, Inc.*, Case No. 6:07-cv-277-Orl-19DAB, 2007 WL 2298032 at *5 (M.D. Fla. Aug. 7, 2007) (noting that settlement of FLSA claim in arbitration proceeding is not enforceable under *Lynn's Food* because it lacked Court approval or supervision by Secretary of Labor); *Nall v. Mal-Motel, Inc*., 723 F.3d 1304, 1306-07 (11th Cir. 2013) (the framework for *Lynn's Food* applies to settlement agreements between former employers and employees).  Before approving an FLSA settlement, the Court must scrutinize it to determine if it is "a fair and reasonable resolution of a bona fide dispute" over FLSA provisions of coverage and liability.  *Lynn's Food*, 679 F.2d at 1354-55.  "If a settlement in an

employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; [the Eleventh Circuit allows] the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id*. at 1354.

In determining whether the settlement is fair and reasonable, the Court should consider the following factors:

>  (1) the existence of collusion behind the settlement;
>  (2) the complexity, expense, and likely duration of the litigation;
>  (3) the stage of the proceedings and the amount of discovery completed;
>  (4) the probability of plaintiff's success on the merits;
>  (5) the range of possible recovery; and
>  (6) the opinions of counsel.

*See Leverso v. South Trust Bank of Ala. Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994); *Hamilton v. Frito-Lay, Inc.*, Case No. 6:05-cv-1592-Orl-22JGG, 2007 WL 328792 at *2 (M.D. Fla. Jan. 8, 2007). The Court should be mindful of the strong presumption in favor of finding a settlement fair. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).[1]

In FLSA cases, the Eleventh Circuit has questioned the validity of contingency fee agreements. *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (citing *Skidmore v. John J. Casale, Inc.*, 160 F.2d 527, 531 (2d Cir. 1947) ("We have considerable doubt as to the validity of the contingent fee agreement; for it may well be that Congress intended that an employee's recovery should be net....")). In *Silva*, the Eleventh Circuit held:

> That Silva and Zidell entered into a contingency contract to establish Zidell's compensation if Silva prevailed on the FLSA claim is of little moment in the context of FLSA. FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement. FLSA provides for reasonable attorney's fees; the parties cannot contract in derogation of FLSA's provisions. *See Lynn's Food*, 679 F.2d at 1352 ("FLSA rights cannot be abridged by contract or otherwise waived.") (quotation and citation omitted). To turn a blind eye to an agreed upon contingency fee in an amount greater than the amount determined to be reasonable after judicial scrutiny runs counter to FLSA's provisions for compensating the wronged employee. *See United Slate, Tile & Composition Roofers v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 504 (6th Cir. 1984) ("the determination of a reasonable fee is to be conducted by the district court regardless of any contract between plaintiff and plaintiff's counsel"); *see also Zegers v. Countrywide Mortg. Ventures, LLC*, 569 F.Supp.2d 1259 (M.D. Fla. 2008).

*Id*. at 351-52.[2]  In order for the Court to determine whether the proposed settlement is reasonable, counsel for the claimant(s) must first disclose the extent to which the FLSA claim has or will be compromised by the deduction of attorney's fees, costs or expenses pursuant to a contract between the plaintiff and his or her counsel, or otherwise. *Id*.  When a plaintiff receives less than a full recovery, any payment (whether or not agreed to by a defendant) above a reasonable fee improperly detracts from the plaintiff's recovery.[3]  Thus, a potential conflict can arise between counsel and their client regarding how much of the plaintiff's total recovery should be allocated to attorney's fees and costs.[4]  It is the Court's responsibility to ensure that any such allocation is reasonable. *See Silva*, 307 F. App'x at 351-52.  In doing so, the Court uses the lodestar method for guidance. *See Comstock v. Florida Metal Recycling, LLC*, Case No. 08-81190-CIV, 2009 WL 1586604 at *2 (S.D. Fla. June 5, 2009).  As the Court interprets the *Lynn's Food* and *Silva* cases,

---

[2] In the Eleventh Circuit, unpublished cases are not binding, but are persuasive authority.  11th Cir. R. 36-2.

[3] From a purely economic standpoint, a defendant is largely indifferent as to how its settlement proceeds are divided as between a plaintiff and his or her counsel.  Where a plaintiff is receiving less than full compensation, payment of fees necessarily reduces the plaintiff's potential recovery.

[4] This potential conflict is exacerbated in cases where the defendant makes a lump sum offer which is less than full compensation, because any allocation between fees and the client's recovery could become somewhat arbitrary.

where there is a compromise of the amount due to the plaintiff, the Court should decide the reasonableness of the attorney's fees provision under the parties' settlement agreement using the lodestar method as a guide. In such a case, any compensation for attorney's fees beyond that justified by the lodestar method is unreasonable unless exceptional circumstances would justify such an award.

An alternate means of demonstrating the reasonableness of attorneys' fees and costs was set forth in *Bonetti v. Embarq Management Co.*, Case No. 6:07-cv-1335-Orl-31GJK, 2009 WL 2371407 (M.D. Fla. Aug. 4, 2009). In *Bonetti*, the Honorable Gregory A. Presnell held:

> In sum, if the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) *represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.*

*Bonetti*, 2009 WL 2371407, at *5 (emphasis added). Judge Presnell maintained that if the matter of attorney fees "[is] addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement." *Id*. The undersigned finds this reasoning persuasive.

### III.   ANALYSIS.

This case involves disputed issues of liability, the amount damages, and entitlement to liquidated damages under the FLSA, which constitutes a bona fide dispute. Doc. Nos. 1, 9, 21. *See Lynn's Food*, 679 F.2d at 1354. The parties are represented by independent counsel, who are obligated to vigorously represent their clients. *See* Doc. Nos. 1, 9, 21. The Agreement states:

> [Defendant] and [Plaintiff] intend for all of the provisions of this Agreement to be severable and reformable.  If any part of this Agreement is found to be unlawful or unenforceable, [Defendant] and [Plaintiff] want every other part of this Agreement to remain fully valid and enforceable to the maximum extent permitted by law, and **[Defendant] and [Plaintiff] want the Court to have the power to modify provisions to make them enforceable**.

Doc. No. 26-1 at ¶ 22 (emphasis added).  Thus, the parties have agreed that should the Court find any provision of the Agreement to be unlawful or unenforceable, the Court is empowered to modify the Agreement. *Id.*

The Agreement contains two provisions – a confidentiality and non-disparagement clause, as well as mutual general releases – warranting further discussion.   The Agreement provides:

> [Plaintiff] agrees to keep confidential the existence of this Agreement, the terms of this Agreement, and any facts regarding the claims underlying this Agreement.  [Plaintiff] will not disclose any information about this Agreement, including its existence to anybody other than his spouse, lawyers, or financial advisors but only if they first agree to keep the existence and terms of this Agreement confidential.  [Plaintiff] also can show this Agreement to government agencies and officials if they request it.  [Plaintiff] further agrees not to disparage [Defendant] or any of the other Releasees in any way.  This is a material provision of this agreement.

Doc. No. 26-1 at ¶ 18. Thus, under the Agreement, Plaintiff is forbidden with narrow exceptions from discussing the existence or terms of the Agreement with anyone and from disparaging Defendant in any manner. *Id.* Courts within this circuit routinely reject such confidentiality and non-disparagement clauses contained in FLSA settlement agreements because they "thwart Congress's intent to ensure widespread compliance with the FLSA." *Pariente v. CLC Resorts and Developments, Inc.*, No. 6:14-cv-615-Orl-37TBS, 2014 WL 6389756, at *5 (M.D. Fla. Oct. 24, 2014) (internal quotations omitted and citing authorities); *see also Weldon v. Backwoods Steakhouse, Inc.*, No. 6:14-cv-79-Orl-37TBS, 2014 WL 4385593, at *4 (M.D. Fla. Sept. 4, 2014) (non-disparagement clauses are generally rejected in FLSA settlement agreements and citing

authority). Additionally, such provisions have been rejected because they are inherently unenforceable due to the public filing of the settlement agreements containing the confidentiality and non-disparagement clauses. *See Housen v. Econosweep & Maintenance Services, Inc.*, No. 3:12-cv-461-J-34TEM, 2013 WL 2455958, at *2 (M.D. Fla. Jun. 6, 2013) (confidentiality clauses are unenforceable when the settlement agreement is filed on the public docket and citing authority). As the confidentiality provision (Doc. No. 26-1 at ¶ 18) is unenforceable, and the Agreement permits the Court to modify the Agreement should it find any provision unenforceable (Doc. No. 26-1 at ¶ 22), the Court may strike that provision from the Agreement. *See Pariente*, 2014 WL 6389756, at *5 (recommending that Court strike confidentiality provision pursuant to paragraph of settlement agreement allowing for severance of unenforceable terms of agreement).

The Agreement contains mutual general releases in which the parties release each other "from all known or unknown claims, causes of action, and liabilities, regardless of their kind, arising at any time prior to the moment [they] sign[ ] this Agreement." Doc. No. 26-1 at ¶¶ 5-6. In *Moreno v. Regions Bank*, 729 F.Supp.2d 1346 (M.D. Fla. 2010), the Honorable Steven D. Merryday held that "a pervasive release in settlement of an FLSA action is both unfair and incapable of valuation." *Id*. at 1352. In *Bright et. al. v. Mental Health Res. Ctr., Inc.*, Case No. 3:10-cv-427-J-37TEM, 2012 WL 868804 (M.D. Fla. Mar. 14, 2012), the Honorable Roy B. Dalton adopted Judge Merryday's reasoning in *Moreno*. *Id*. at *4. Judge Dalton stated that "[p]ervasive, overly broad [general] releases have no place in settlements of most FLSA claims." *Id*. Judges following the reasoning of *Moreno* and *Bright* will not approve an FLSA settlement agreement containing a pervasive general release. However, Courts have approved settlement agreements that contain mutual or reciprocal general releases. *See Bacorn v. Palmer Auto Body & Glass, LLC*, No. 6:11-cv-1683-Orl-28KRS, 2012 WL 6803586 (M.D. Fla. Dec. 19, 2012) (report and

recommendation adopted, 2013 WL 85066 (M.D. Fla. Jan. 8, 2013) (approving settlement agreement where employee signed a general release in exchange for a mutual release from employer); *Vergara v. Delicias Bakery & Rest., Inc*., No. 6:12-cv-150-Orl-36KRS, 2012 WL 2191299, at *2-3 (M.D. Fla. May 31, 2012), report and recommendation adopted, 2012 WL 219492 (M.D. Fla. Jun. 14, 2012) (approving settlement where general release by employee was exchanged for a mutual release by employer).  In this case, because the terms of the parties' releases are largely identical (*see* Doc. No. 26-1 at ¶¶ 5-6), the parties are no longer in an employment relationship, and they are represented by counsel, the undersigned is persuaded that the the inclusion of the reciprocal releases in this case do not negatively affect the fairness of parties' settlement.  *See generally Nall*, 723 F.3d at 1307 (where the parties are no longer engaged in an employment relationship the concern set forth in *Lynn's Food* about the relative inequalities between the parties is not as great a concern).

With respect to the amount of the settlement, in his answers to the Court's interrogatories, Plaintiff calculates his damages as follows: $5,422.26 in unpaid overtime wages; $5,422.26 in liquidated damages; and $800.00, representing an unpaid bonus.  Doc. No. 21-1 at 1-3.  Under the Agreement, Plaintiff will receive a total of $13,375.00, representing: $3,437.50 in unpaid overtime wages; $3,437.50 in liquidated damages; and $6,500.00 for payment of attorneys' fees and costs.  Doc. No. 26-1 at 2-3.  The parties represent that the Agreement is a fair and reasonable compromise of Plaintiff's FLSA claims because they dispute: whether Plaintiff is entitled overtime compensation; the range of possible recovery; and whether Defendant is liable for liquidated damages.  Doc. No. 26 at 3-4.  The parties further represent that the Agreement reflects each side's consideration of the risks and costs associated with further litigating this matter.  Doc. No. 26 at

4. Based on the Court's review of the record and the Agreement, it appears the compensation Plaintiff will receive under the Agreement is fair and reasonable.

As set forth above, Plaintiff's counsel will receive $6,500.00 in attorneys' fees and costs under the Agreement. *See* Doc. No. 26-1 at 3. In the Motion, the parties represent that they "separately negotiated alleged claims for attorneys' fees and costs." Doc. No. 26 at 2. Given the record in this case, there is no reason to believe Plaintiff's recovery is adversely affected by the amount of attorneys' fees and costs to be paid to Plaintiff's counsel. *See Bonetti*, No. 6:07-cv-1335, 2009 WL 2371407, at *5.

Based on the forgoing, it is **RECOMMENDED** that the Court exercise its discretion under the Agreement to strike the confidentiality and non-disparagement clause (Doc. No. 26-1 at ¶¶ 18, 22) as unenforceable and, otherwise, find that the Agreement reflects a fair and reasonable compromise under the FLSA.

**IV.   CONCLUSION.**

Accordingly, it is **RECOMMENDED** that:

1. The Motion (Doc. No. 26) be **GRANTED in part and DENIED in part** as follows:

    a. The Court **STRIKE** the confidentiality and non-disparagement clause (Doc. No. 26-1 at ¶ 18) pursuant to its authority provided in the severability provision (Doc. No. 26-1 at ¶ 22); and

    b. Otherwise, **GRANT** the Motion only to the extent that the Court finds the parties' settlement is fair and reasonable;

2. Enter an order dismissing the case with prejudice and direct the Clerk to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from

attacking the factual findings on appeal. **In order to expedite a final disposition of this matter, if the parties have no objection to this Report and Recommendation they may promptly file a joint notice of no objection**.

      Recommended in Orlando, Florida on March 5, 2015.

                                          GREGORY J. KELLY
                             UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy